In the Matter of the Application for the Discipline of Richard PRESCOTT, an Attorney at Law of the State of Minnesota.

No. 48669.

Supreme Court of Minnesota.

Oct. 13, 1978.

R. Walter Bachman, Jr., Administrative Director on Prof. Conduct, Michael Hoover, Staff Atty. Lawyers Prof. Resp. Bd., St. Paul, for appellant.

Allen Saeks, Minneapolis, for respondent.

SHERAN, Chief Justice.

This matter comes before the court on a Petition for Disciplinary Action by the Lawyers Professional Responsibility Board (LPRB) accompanied by a proposed stipulation, submitted to the court in lieu of a formal answer by respondent, in which both parties request the court to order that respondent be suspended from the practice of law for a period of one year commencing on June 1, 1978, or thereafter. For the reasons delineated below we propose to stay the order of suspension for three years.

Respondent is a sole practitioner involved in the representation of a limited number of a small corporate clients. In 1973 he was retained by Alvin N. Roth on a contingent fee basis either to locate an offshore property management company for Roth to acquire or to set up a new company. Until January 1976, when, through respondent's efforts, Roth acquired such a company, respondent received nothing from his work on the project, either in the form of income or as reimbursement for the more than $15,000 that the project had cost him in out-of-pocket expenses.

In late 1974 and early 1975 Roth applied to the Trust Company of New Jersey for

various loans to be made to corporations controlled or owned by him. One loan for $35,000 to Commonwealth Equities, Inc. was approved and authorized by Louis H. Sklaroff, an officer of the Trust Company. Prior to receiving the loan, Roth promised to lend some of it to respondent to cover the expenses respondent had incurred until such time as Roth could afford to pay respondent his fees.

In early 1977 respondent and Roth were indicted by a Grand Jury for the United States District Court for the Southern District of New York and charged with ten counts of violating Title 18 of the United States Code. On May 11, 1977, respondent pled guilty to violating 18 U.S.C. §§ 2 and 215[1] in return for dismissal of the other nine counts. The crime to which he pled guilty was a misdemeanor, while all or some of the other counts were felonies. On August 25, 1977, respondent received a fine of $5,000 as his sentence.

▮ Respondent's conduct warrants disciplinary action by this court. By pleading guilty, he admitted that he violated the Code of Professional Responsibility, which is itself a basis for discipline. He admitted that he failed to report a fraud of which he was aware and that he assisted his client in perpetrating an illegal act. It appears from the evidence that he accepted part of the proceeds of a loan that he knew or should have known was procured by improper methods. This is a serious transgression of the ethical responsibilities of an attorney. Furthermore, this court is aware that the situation in which Mr. Prescott found himself is one unfortunately not beyond the realm of those with which the members of the legal profession must regularly deal. Thus, now is the time for this court to put the bar of Minnesota on warning that even passive participation in a process by which loans or other funds are obtained through false pretenses or through omissions which functionally approach false pretenses will be considered grounds for professional discipline. And just as exoneration will not follow from lack of active participation or encouragement, so too will the mere fact of nonparticipation in the benefits of this kind of activity not stay the imposition of sanctions. This is the meaning that must be given to DR 1–102(A)(4)[2] if it is to speak to

---

1. The substantive crime is defined in § 215 as follows:

"Receipt of commissions or gifts for procuring loans

"Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, of a Federal intermediate credit bank, or of a National Agricultural Credit Corporation, except as provided by law, stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value, from any person, firm, or corporation, for procuring or endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan or substitution of security, or the purchase or discount or acceptance of any paper, note, draft, check, or bill of exchange by any such bank or corporation, shall be fined not more than $5,000 or imprisoned not more than one year or both."

What linked respondent to this crime was § 2 which contains a rather expansive definition of principal:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Thus, although respondent admitted to no more than passive failure to make the necessary inquiries and did not himself have personal contact with Sklaroff, under federal law he could have been considered a principal if a jury had decided that he aided and abetted by failing to inquire into the financial statements and other circumstances surrounding the loans despite his knowledge that Roth had taken Sklaroff to Puerto Rico, and by retaining part of the loans for non-corporate purposes.

The comparable crimes in Minnesota would be fraud in obtaining credit, Minn.St. 609.82, or bribery of a public officer or employer, Minn.St. 609.42, subd. 1. Both of these crimes are felonies. Respondent probably could not have been charged under Minnesota law, however, because he was not an active participant in the criminal conduct.

2. DR 1–102(A)(4) provides as follows: "(A) A lawyer shall not:

\* \* \* \* \* \*

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

the realities of practicing law. The public that is to be protected by professional discipline thus is not limited to the potential clients of unscrupulous lawyers, but includes the general public that ultimately suffers when loans are procured improperly from banks or government agencies.

■ There are, however, certain circumstances which make the imposition of the terms to which the parties agreed in their stipulation inappropriate at this time. Before this incident respondent had an umblemished record, and he cooperated fully in the Lawyers Professional Responsibility Board's investigation of the incident. Respondent's candor and attitude toward this event convince this court that he can continue to practice law without harm to himself or others. Furthermore, his financial family obligations and the damage that accrues to the practice of a sole practitioner during a suspension indicate that a suspension is an unwarranted addition to the punishment respondent has already suffered.

Rather than suspending respondent for one year, what amounts to a period of probation would appear to be more appropriate. See, *In re Discipline of Nordstrom,* Minn., 264 N.W.2d 629 (1978); *In re Discipline of Moriarty,* 288 Minn. 560 (1970); *In re Discipline of Ray,* 288 Minn. 563 (1970). Thus, we will stay the order of suspension for three years upon the condition that respondent's practice of law be supervised by Allen Saeks, an attorney duly admitted to practice law in the State of Minnesota, who will serve as a representative of this court. Respondent will report regularly to Allen Saeks, at intervals to be specified by Mr. Saeks. If respondent comports himself in a manner above reproach and abides not only by all the Disciplinary Rules but also by the Ethical Considerations of the Code of Professional Responsibility, as determined by Allen Saeks, then he will recommend to the court that respondent's suspension be stayed indefinitely. If respondent fails to comply with any of these requirements, however, his suspension will begin immediately.