In the Matter of the Disciplinary Action against Ted MARAGOS, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT, Petitioner,

v.

Ted MARAGOS, Respondent.

Civ. No. 9595.

Supreme Court of North Dakota.

Oct. 11, 1979.

Gregory D. Morris, Bismarck, for petitioner.

Ted Maragos, Grand Forks, pro se.

SAND, Justice.

This is a disciplinary proceeding against Ted Maragos, a sole practitioner, who was admitted to practice on 19 July 1972, and has been a member of the Bar of the State of North Dakota since then. Four letters of informal complaint were filed with the disciplinary board of the Supreme Court between 12 August 1977 and 16 May 1978, each alleging professional grievances against Maragos. After initial investigations and inquiry proceedings it was determined that formal disciplinary proceedings were appropriate, and a three-member hearing panel was appointed. A hearing on the four complaints was held on 27 November 1978, at which Maragos appeared pro se.

The hearing panel filed its findings of fact, conclusions of law, and recommendations with the Supreme Court on 24 January 1979, and served a copy upon Maragos. Our summary of the panel's relevant findings of fact will be helpful in understanding the issues.

On 11 July 1977, Maragos accepted a $275 retainer fee from Mrs. George Hunt to supervise Mr. George Hunt during a period of provisional release to be obtained for Mr. Hunt from the North Dakota State Penitentiary. Maragos prepared and presented a motion for provisional release to the county court with increased jurisdiction for Stutsman County. The motion was denied.

After Maragos failed to make repayment, Mrs. Hunt filed a complaint with the disciplinary board on 12 August 1977. The $275 retainer was not returned until October of 1978, approximately two months after Mrs. Hunt had made a written demand to the respondent. Maragos stated he did not return the funds earlier because he did not have the money to do so.

On 5 January 1977 Mrs. Irene Geisler retained Maragos to institute a dram shop action on her behalf. She gave Maragos a $250 retainer and an additional $27 to serve and file the papers in the dram shop matter. After a limited amount of investigation on the part of Maragos, he never prepared or filed any pleadings, documents or papers, nor did he obtain service on any individual with regard to the matter. Maragos did not believe the dram shop case had any merit but he did not inform Mrs. Geisler that he would not proceed with the case. Instead, on 14 October 1977, he wrote a letter to Mrs. Geisler informing her that the matter would either be settled or be "prepared for trial no later than 20 January 1978."

Maragos returned the $250 retainer and the $27 service and filing fees, with interest, in October of 1978. He indicated the money was not refunded sooner because he did not have the funds with which to do so.

On or about 3 December 1976, through his former father-in-law, Mr. Harry Berg, Maragos was retained to represent Mr. Gilbert Bourgois in an action by the Jennings Lumber Company for a debt allegedly owed by Mr. Bourgois, and a related cross-claim based upon an allegation of improper garnishment by the Jennings Lumber Company. Mr. Bourgois had formerly been represented in the action by Mr. Robert Lundberg, a Bismarck attorney, who interposed a pleading in the case, but withdrew as counsel for Mr. Bourgois because of conflict-of-interest reasons. Maragos received a retainer of $300 on 3 December 1976, and an additional $500 on 13 December 1976.

The garnishment against Mr. Bourgois was dissolved after a hearing, and on 30 September 1977 a trial was held in the matter of *Jennings Lumber Co. v. Gilbert Bourgois*. Maragos testified before the hearing panel that the defense for Mr. Bourgois was premised on an accord and satisfaction which Mr. Bourgois failed to produce for him prior to the trial, as well as at trial. The answer, filed by Mr. Lundberg for and on behalf of Mr. Bourgois, admitted liability on the debt to Jennings Lumber Co., did not assert any affirmative defense in the nature of an accord and satisfaction, but did contain a cross-claim seeking exemplary damages for the garnishment. No amended answer was prepared by Maragos prior to the hearing, and no evidence was offered in support of the cross-claim. The ultimate result was a judgment for the amount of the debt in favor of Jennings Lumber Co. Immediately after the trial, Mr. Bourgois paid Maragos an additional $200.

Mr. Bourgois claimed that Maragos led him to believe that Maragos would pursue the matter, even if it required an appeal to the Supreme Court, but no appeal was taken by him, nor did he inform Mr. Bourgois of the outcome of the trial. There was no further communication between Maragos and Mr. Bourgois until Bourgois received a check dated November 1978 from Maragos in the amount of $220 payable to "Gilbert Bourgois and Harry Berg." According to Maragos the check was issued in that manner in order to permit a collection on an alleged indebtedness running from Mr.

Bourgois to Mr. Berg. Maragos stated the check represented a return of the retainer of $200 and $20 interest.

The $300 retainer was for handling the garnishment. The $500 retainer, according to Maragos, was to represent Mr. Bourgois on the main action on the debt. According to Mr. Bourgois, it was also for the purpose of pursuing a malicious prosecution action against the Jennings Lumber Co. The $200 retainer paid by Mr. Bourgois to Maragos was to pursue the case to completion, even if an appeal were required.

On 16 November 1977, Mrs. Patti Pfaff retained the services of Maragos for the purpose of obtaining an increase in support payments for her children through the North Dakota courts. A cash retainer of $50 was paid to Maragos on that date. The testimony of Mrs. Pfaff indicated that no further communications were received from Maragos until he returned her retainer, with $5 interest, a year later. Maragos, however, indicated there were additional contacts with Mrs. Pfaff and with her attorney in Nebraska, where Mrs. Pfaff's husband was obtaining a divorce from her by stipulated default. Maragos maintained that he had asked Mrs. Pfaff for a copy of the Nebraska decree, but she did not recall the request. No further action was taken by Maragos on behalf of Mrs. Pfaff.

Based upon the above findings of fact, the three-member hearing panel concluded that the conduct of the respondent violated § 27–13–05 of the North Dakota Century Code,[1] Canon 9, DR 9–102(B)(4) of the Code of Professional Responsibility,[2] Canon 1, DR 1–102(A)(1), (3), (4) and (6) of the Code of Professional Responsibility,[3] Canon 6, DR 6–101(A)(2), and (3) of the Code of Professional Responsibility,[4] and Canon 7, DR 7–101(A)(1) and (2) of the Code of Professional Responsibility.[5]

The hearing panel then recommended that Maragos' certificate of admission to the North Dakota Bar be suspended for at least one year and that he pay the costs of the disciplinary proceeding.

Pursuant to Rule 10(1) of the North Dakota Rules of Disciplinary Procedure, Maragos filed exceptions, both generally and specifically, to the conclusions and recommendations of the panel with regard to the Code of Professional Responsibility violations. Further, Maragos took exception to the conclusion regarding § 27–13–05, NDCC, arguing that the statute was not intended to apply in matters of this nature, and to the recommendation that he pay the

1. An attorney, except as otherwise provided in sections 27–13–06 and 27–13–07, who receives money or property of his client in the course of his professional business and who refuses to pay or deliver the same to the person entitled thereto within a reasonable time after a demand therefor has been made upon him, is guilty of a class A misdemeanor.

2. Canon 9, DR 9–102:
   (B) A lawyer shall:
   (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

3. Canon 1, DR 1–102:
   (A) A lawyer shall not:
   (1) Violate a Disciplinary Rule.
   (3) Engage in illegal conduct involving moral turpitude.
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

4. Canon 6, DR 6–101:
   (A) A lawyer shall not:
   (2) Handle a legal matter without preparation adequate in the circumstances.
   (3) Neglect a legal matter entrusted to him.

5. Canon 7, DR 7–101;
   (A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offense tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

costs of the disciplinary proceedings, arguing that § 27–14–10,[6] NDCC, mandates expenses be paid out of the State Bar fund.

■ Finally, Maragos excepted to the nature of the panel's conclusions and recommendations in that he was unable to defend himself properly without knowledge of the specific alleged disciplinary violations which corresponded to each complaint brought against him. This was not followed up in his brief or argument. We deem it as abandoned.

On 27 April 1979, Maragos filed a brief with this Court accepting without dispute the findings of fact of the hearing panel as summarized above. Maragos also conceded in his brief that the conclusions of the panel enumerating disciplinary violations based upon misuse of his clients' funds[7] "were not totally without merit and that all statements he made alleging the same are . . withdrawn."

■ The authority to promulgate rules and regulations for the admission to practice, conduct, discipline, and disbarment of attorneys at law is based upon Section 87[8] of the present North Dakota Constitution and § 27–14–01, NDCC. This Court, unless the legislature otherwise provides by law, is vested with the duty of maintaining the integrity of the legal profession by imposing disciplinary measures, including disbarment or suspension of lawyers who indulge in conduct which will bring the court or the legal profession into disrepute. *In re Peterson*, 178 N.W.2d 738 (N.D.1970).

The initial determination we must make concerns the scope or standard of review used by this Court in attorney disciplinary proceedings. The three-member disciplinary hearing panel may either dismiss the complaint, issue a private reprimand, or recommend public reprimand, suspension, or disbarment, in which case it shall submit to this Court its findings, recommendations, and the entire record of its proceedings. Rule 5(C)(3), NDRDP.

The scope of our review in a disciplinary action against a judge in which exceptions were filed was established in *Matter of Cieminski*, 270 N.W.2d 321 (N.D.1978). There, the Judicial Qualifications Committee, like the three-member hearing panel in attorney disciplinary proceedings, was required to make the investigation, conduct the hearing, and make its findings and recommendations to this Court. We held that because the duty, authority, burden, and responsibility of determining and making the actual judgment and appropriate penalties rested with the Supreme Court, so did the concomitant obligation to conduct an independent inquiry into the evidence to determine whether or not it merited the imposition of any penalty recommended by the Judicial Qualifications Commission. Accordingly, the review was established to be de novo on the record, with the proper standard of proof being by "clear and convincing evidence." 270 N.W.2d at 325–326.

■ Disciplinary proceedings against judges and those against attorneys are very closely related with regard to safeguarding the public from those who fail to maintain the high standard of fitness required by the legal profession. The primary aim of disciplinary proceedings against a judge is to maintain the honor and dignity of the judiciary and the proper administration of justice. Likewise, the purpose of disciplinary proceedings against an attorney is not primarily to punish the attorney, but to determine, in the public interest, if such attorney should be permitted to practice law. *Matter of Cieminski, supra; In re Peterson*, 178 N.W.2d 738 (N.D.1970); *State ex rel. Nebraska Bar Association v. Palmer*, 160 Neb.

---

**6.** Section 27–14–10, NDCC:

The expenses incident to the investigation of charges against a member of the bar of this state and to a prosecution of the accused shall be paid out of the state bar fund.

**7.** Canon 9, DR 9–102(B)(4), NDRPR. See n. 2.

**8.** Section 87, North Dakota Constitution:

The supreme court shall have authority to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state; and, unless otherwise provided by law, to promulgate rules and regulation for the admission to practice, conduct, disciplining, and disbarment of attorneys at law. . . .

786, 71 N.W.2d 491 (1955); *In re Goodrich*, 78 S.D. 8, 98 N.W.2d 125 (1959).

■ In light of the above, we are of the opinion that attorneys, as officers of the court, should be held subject to the same standards of review as judicial officers. To institute a different standard of review in disciplinary proceedings against attorneys than that used in disciplinary proceedings against judges would necessarily create an unwarranted "appellate favoritism" to one or the other profession. We, therefore, adopt the scope and standard of review in *Cieminski* and conclude our review in disciplinary proceedings against attorneys be de novo on the record, with the standard of proof being by clear and convincing evidence.

■ The findings, conclusions, and recommendations of the hearing panel will be given due weight by this Court especially where the demeanor of the witness is a factor.

■ Maragos argued that because of the provisions of § 27–14–10, NDCC, he should not be required to pay for the costs of the disciplinary proceedings. His argument is not well founded. Section 27–14–10 merely authorizes the use of certain funds for disciplinary proceedings. It has no relation to the assessment of costs which is a part of the discipline imposed. The authority of the Court to assess costs was fully explored in *Cieminski, supra,* wherein we recognized that the Court has been imposing costs as a matter of course in disciplinary proceedings against attorneys and that the authority granted to the Court was not merely to impose either the maximum or minimum disciplinary measure but also authorized any appropriate inbetween measure. No valid argument by Maragos has been presented to change this concept.

■ During oral argument Maragos made statements explaining in greater detail his actions with reference to the retainers (and why he did what he did) than he had made to the panel under oath. In response to questions by the Court, he stated that the statements he was making were not contained in the record before the Court. Maragos was then informed that if the record did not contain the evidence or statements he was making, the Court could not consider them as evidence in the ultimate resolution of the question before the Court. Maragos then moved that the case be remanded for the taking of his testimony.

We have carefully examined the testimony of Maragos before the three-member disciplinary board hearing panel with the statements he made at oral argument and find that the statements made during oral argument contained more information than the testimony presented to the panel. However, we conclude that a remand is not necessary because of our ultimate disposition of the case and we, therefore, deny the motion to remand.

■ We are also mindful that similar disciplinary measures should be imposed for similar violations under similar circumstances, even though each case is and must be judged on its own merits and facts.

Without considering the statements made by Maragos in oral argument but relying solely upon his testimony before the hearing panel it becomes clear that he earned a substantial portion of the retainer fee he received, but nevertheless, upon complaint, returned the full retainer plus substantial interest. The issue of the dollar value of his service was not explained by the panel.

■ We are cognizant that Maragos declined to be present when the complainants were examined and also declined to cross-examine them and must assume the responsibility for his actions. At the same time we deem it appropriate to note that what we said in *Cieminski, supra,* applies here: the role of the staff attorney is that of an advocate for the truth in the investigation and at the hearing. The staff attorney is not the attorney or the advocate for the complainants. *Cieminski,* 270 N.W.2d 326.

■ The motion to remand and the statement in his brief are somewhat incompatible. In his brief Maragos stated:

". . . Respondent concedes that those enumerated disciplinary violations based upon misuse of his clients' funds are not totally without merit and that all statements that he has made alleging the same are hereby withdrawn."

That indicates that we have circumstances here that should be considered, especially his candor and attitude, in his effort to correct the violations of the Code of Professional Responsibility, in addition to his being a sole practitioner. Our concern is primarily to protect the public which ultimately suffers from such violations and to implement preventive measures commensurate with the specific circumstances.

█ Taking into account the admission of Maragos that he violated certain canons, we conclude that the recommendation of the panel, with some modification, will be appropriate. See, *Matter of Prescott*, 271 N.W.2d 822, 824 (Minn.1978). Supervision of probation has been an accepted corrective disciplinary measure in the State of Minnesota, *Prescott, supra. In re Nordstrom*, 264 N.W.2d 629 (Minn.1978), and has been recognized by our Court in *Application of McKinnon*, 264 N.W.2d 448, 452 (N.D. 1978).

We, therefore, stay the one-year suspension order recommended by the panel for a period of two years upon the condition that the practice of law of Maragos be supervised by an attorney duly admitted to practice law in North Dakota who will also serve as a representative of the Disciplinary Board and this Court.

It is therefore ordered that unless Maragos furnishes to this Court, within thirty days, the name of a qualified North Dakota attorney who accepts in writing the responsibility of acting as a supervisor-representative for this Court and the Disciplinary Board, the suspension recommended by the panel will automatically go into effect unless specifically otherwise ordered by this Court. Maragos, as a further condition, will report periodically to the designated supervisor-representative at regular inter-

vals to be specified by such representative. The report must cover all cases for which a retainer fee has been received or a contract for legal services has been entered into and shall specifically include the area which prompted complaints to be filed against Maragos.

If the representative-supervisor finds at the end of two years that Maragos has abided by the disciplinary rules and by the ethical considerations of the Code of Professional Responsibility the representative-supervisor shall recommend to the Court that the one-year suspension recommended be set aside and quashed. If, however, Maragos fails to comply with or satisfy these requirements and the Court, being informed of such failure either by the Disciplinary Board or by the representative-supervisor, the one-year suspension shall begin immediately upon receipt of the report.

There is an inference that some of Maragos' problems stem from the over-use of alcoholic beverages and drugs.[9]

It is further ordered that Maragos refrain from using alcoholic beverages, or medications other than nonprescription proprietary medicines, or controlled substances except as prescribed by a physician.

It is further ordered that Maragos pay for the costs of the disciplinary proceedings, which amount is to be determined by the Disciplinary Board or its designated officer or agent and that he submit to the Clerk of the Supreme Court evidence of payment or evidence that satisfactory arrangement for payment have been made with the Disciplinary Board. Failure to comply with any of the above orders will also put into operation the one-year suspension recommended by the panel.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

---

9. In his brief Maragos stated that as a result of being badly injured in an automobile accident he became addicted to those drugs prescribed by his physician.