In the Matter of the Application for Disciplinary Action against Orrin B. LOVELL, a member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT, Petitioner,

v.

Orrin B. LOVELL, Respondent.

Civ. No. 9717.

Supreme Court of North Dakota.

April 21, 1980.

Gregory Morris, Staff Counsel, Disciplinary Board, Bismarck, for petitioner; argued by Mr. Morris.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for respondent; argued by Ward M. Kirby, Dickinson.

ERICKSTAD, Chief Justice.

This is a disciplinary proceeding brought against Orrin B. Lovell, a sole practitioner engaged in the practice of law in Beach, North Dakota. A letter of informal complaint was filed with the Disciplinary Board of the Supreme Court on October 6, 1978, wherein professional grievances were alleged against Lovell. An investigation was conducted by the Inquiry Committee East of the State Bar Association of North Dakota pursuant to Rule 8 of the North Dakota Rules of Disciplinary Procedure. The committee recommended to the Disciplinary Board that Lovell be issued a private reprimand, but in lieu thereof the Disciplinary Board determined that formal disciplinary proceedings should be undertaken. A three-member panel was appointed and a formal hearing was held on October 9, 1979, at which Lovell was represented by counsel. Based upon the files, records, and evidence presented at that hearing, the panel recommended to the Supreme Court that Lovell be publicly reprimanded for his conduct and violations of the Code of Professional Responsibility, and that he be required to pay for the expense of the formal disciplinary proceedings.

Our scope and standard of review in disciplinary proceedings against attorneys is de novo on the record. *Matter of Maragos*, 285 N.W.2d 541 (N.D.1979). Therefore, a chronological summary of the facts in the instant case is necessary and will be helpful in understanding the basis for the complaint which gave rise to these proceedings.

Lovell has been engaged in the practice of law in North Dakota since 1950, practicing primarily in the small town of Beach, North Dakota. The basis for the complaint to the Disciplinary Board was Lovell's failure to act expeditiously in handling two ancillary probates in North Dakota in the estates of Archie Bernatz and Bertha Bernatz. Lovell had handled various legal matters for the Bernatz family over a period of years.

The problems all began on September 28, 1974, when Archie Bernatz passed away while living in California and left a will which named his sister Bertha as personal representative of his estate. Lovell was asked to handle the ancillary probate of Archie's estate in North Dakota, which consisted entirely of three tracts (quarter sections) of land.

At the time of Archie's death, Bertha was residing in the home of Earl and Evelyn Jennings in California. Evelyn Jennings was a cousin of the Bernatzes. Bertha was in her nineties and suffering from poor health. The record indicates that the real property in the estate of Archie Bernatz was never transferred to Bertha because, according to Lovell, she was adamant in her desire not to sell the land. Virtually no action was taken to close the estate until after Bertha passed away on April 16, 1975. Lovell's attorney conceded at the oral argument before this court that the estate of Archie Bernatz could have, and probably should have, been closed and the necessary taxes paid prior to Bertha's death, but argued that this failure in itself was not a sufficient basis for attorney discipline.

Bertha died testate on April 16, 1975, naming Evelyn Jennings, Marjorie Cammack, and Marjorie Effron as beneficiaries under her will. These three women had also been named as beneficiaries under the will of Archie Bernatz had Bertha not survived his death.

On June 10, 1975, the beneficiaries named in Bertha's will traveled to Beach, North Dakota, to meet with Lovell and discuss the disposition of the two estates. What took place at that meeting is unclear as there is virtually no written documentation of what transpired at that meeting. It should be noted that the entire record in this case is practically devoid of any written correspondence or documentation of conversations which transpired between Lovell and the complainants. Neither Lovell nor the complainants maintained records which are of any assistance to this court in attempting to

determine what was said and done in the handling of these two estates. Virtually all communication between the parties was verbal. Nevertheless, we are certain that a meeting did indeed take place at Lovell's office in June of 1975. Present at that meeting were the three previously named beneficiaries as well as Earl Jennings and Ernest Cammack. It was determined at that meeting that Lovell would continue as the attorney handling the estates of both Archie Bernatz and Bertha Bernatz. Evelyn Jennings and Earl Jennings were subsequently appointed personal representatives of Archie's and Bertha's estates, respectively.

As previously stated, there were three tracts of land in the estate of Archie Bernatz which were owned by Archie Bernatz at the time of his death. According to the affidavit of Earl Jennings, the original complainant, it was determined at the June 1975 meeting that two tracts of land were to be sold immediately and that Lovell was to handle the sale. However, Lovell contends that such an agreement had not been made, but, instead, that he recommended the sale of the two tracts of land be conducted after January 1, 1976, as the land had already been seeded for the 1975 crop season. Lovell informed those at the meeting that he would advertise the land for sale and obtain bids on the property. The third tract of land was under lease through 1978 and it was determined that this tract would be sold upon termination of the lease.

In January of 1976, Lovell delivered the abstracts relating to the two tracts of land to be sold to the Abstract and Title Company of Beach, North Dakota, for continuation. Suffice it to say that the abstract company had a history of being slow in completing its work. Lovell was apparently aware of the abstract company's slow service.

Notice of the sale of the two tracts of land was published during two successive weeks in April of 1976, and the bids were closed on April 20. The terms of the sale made no provisions for any earnest money or for a downpayment. The bids were for a cash purchase price payable within 90 days after acceptance and upon delivery of the abstracts showing merchantable title. According to an affidavit of Earl Jennings of August 15, 1979, a letter was sent on April 21, 1976, to Evelyn Jennings from a William G. Heth, an attorney from Dickinson, North Dakota, informing her of the amount of the highest bids and requesting that he be notified of an acceptance or rejection of the bids.

Earl Jennings said that this letter from Heth was the first indication that another attorney was involved in the handling of the estates. Lovell, however, contends that Evelyn Jennings was well aware of Heth's involvement in the handling of the estates.

Lovell testified at the hearing before the Disciplinary Board panel that Evelyn Jennings had been suffering from phlebitis and was very irritable prior to July 22, 1976, when the abstracts were finally returned to Lovell from the abstract company in Beach. He said that she was quite upset about the abstract company's delay in returning the abstracts which, according to Lovell, was the primary reason for the delay in closing the sales. In explaining Heth's involvement, Lovell said that Evelyn called him (Lovell) about once every two weeks concerning the delay, and indicated that she wanted to sue the abstract company. Lovell testified that he did not want to file suit against the local abstract company, so he suggested that the files be transferred to another attorney; namely, William G. Heth in Dickinson, with whom Lovell had previously dealt on other matters. According to Lovell, it was at Evelyn Jennings' request that the files were sent to Heth, and this was done sometime around June of 1976.

Heth's involvement with the two estates is unclear from the record. From the record in our court, neither Heth nor Lovell have *any* records which indicate when the files were transferred, for what reason(s) they were transferred, whether or not Heth was to be substituted as attorney-of-record for Lovell, what work Heth was to perform on the files, or when the files were returned to Lovell. The problem is further compli-

cated by the fact that there was virtually no written correspondence between Heth, Lovell, and Evelyn Jennings other than two letters from Heth to Lovell which indicate that Heth was unsure of how to proceed in probating the estates, and seemed to desire Lovell's advice on how to proceed. What is clear is that there was little progress made in closing the estates while the files were in Heth's hands; partially, perhaps, because Lovell did not respond to Heth's inquiries.

The record shows that the abstracts were finally returned to Lovell on July 22, 1976. The files were thereafter sent back from Heth to Lovell sometime in late September or early October of 1976. The exact date is again unclear due to a lack of documentation.

On November 5, 1976 Lovell wrote to Evelyn Jennings enclosing a report of the land sales and deeds. He requested her to sign the deeds and the report of sales and return them to him. In that letter, Lovell also stated that he was preparing a final estate tax return to be filed with the Tax Commissioner within two weeks which would expedite the closing of both the estates of Archie and Bertha Bernatz.

The purchase price for the two tracts of land was received on December 9, 1976, and an order authorizing and confirming the sales was entered on December 13, 1976. Lovell forwarded two checks to Jennings for the full purchase price of the land on December 16. The cover letter dated that same day reiterated Lovell's intent to close both estates after the first of the year (1977).

The record reveals that, throughout the period of time from April through December of 1976, Lovell had been contacted by several of the beneficiaries under Bertha's will concerning the delays over the sale of the land and the closing of the estates, and apparently often failed to return their calls and inform them of what progress had taken place.

The estate tax returns for the two estates were not completed and filed in 1977 as Lovell had indicated he would do in his letters to Evelyn Jennings in late 1976. At the hearing before the Disciplinary Board panel, Lovell testified that the reason for the delay in completing the tax returns was Evelyn Jennings' failure to provide him with the information needed to complete an income tax return for Archie Bernatz. The Tax Commissioner required a release for income tax liability to the State of North Dakota before the commissioner would grant estate tax clearance. See former Section 30–21–09.2, N.D.C.C. On July 29, 1975, the Tax Commissioner's office had written to Lovell and requested Archie Bernatz's income tax returns for the taxable years 1971, 1972, 1973, or a statement giving the reasons the decedent had not filed for the years in question. Lovell failed to respond to this letter or to two follow-up letters sent by the Tax Commissioner on October 3, 1975, and November 10, 1975.

Lovell contends that throughout 1977 and 1978 he repeatedly requested from Evelyn Jennings the information needed in order to obtain a state income tax release and an estate tax clearance for the estate of Archie Bernatz which would enable him to close out both estates. Evelyn Jennings never did provide the information needed to complete the returns. It is possible that had Lovell contacted the California law firm which was handling the probate of the estates in California, he may have secured the necessary information.

On October 6, 1978, Earl Jennings sent a letter of complaint to the Disciplinary Board of the Supreme Court. In the letter, Jennings complained of Lovell's failure to expeditiously handle the probate of the Bernatz estates. More specifically, Jennings was disturbed over the delays in selling the tracts of land, paying the estate taxes, and closing the estates. He asserted that the estates had received no rental monies and no share of the crops on the land while the two tracts were under lease in 1976. Jennings estimated that the estates lost approximately $8,000 as a result of the delay in closing the sales. He also said that the income and estate tax returns had not yet been filed and that this added delay would result in the payment of unnecessary interest and penalties.

Evelyn Jennings passed away in California on October 12, 1978. On December 8, 1978, Lovell sent a letter to Earl Jennings in which the following items were enclosed to be signed by Jennings and returned to Lovell's office:

(1) A petition for appointment as a personal representative in the estate of Archie Bernatz;

(2) The estate tax return in the Archie Bernatz estate, said tax amounting to $2,269.58, plus accrued interest in the amount of $559.83 which Lovell deducted from his attorney's fees due to the delay;

(3) Letters testamentary; and

(4) A deed of personal representative which transferred the property from the estate of Archie Bernatz to the estate of Bertha Bernatz.

The following day, December 9, 1978, Lovell sent another letter to Earl Jennings concerning the estate of Bertha Bernatz. Enclosed were the following items to be signed and returned by Jennings:

(1) Original letters testamentary which had been sent to Jennings on December 16, 1976, but had never been signed and returned;

(2) An inheritance tax report and estate tax return, said tax amounting to $1,529.02 plus accrued interest in the amount of $316. Lovell again deducted the interest charge from his attorney's fees because of the delay in completing the return;

(3) An inventory and appraisement; and

(4) Deeds for the eventual distribution of the property.

Earl Jennings was appointed personal representative of the estate of Archie Bernatz on December 28, 1978. The estate tax return for that estate was filed January 29, 1979.

On March 3, 1979, Earl Jennings discussed with Lovell the status of the two estates and the proposed deed for the transfer of the title to the third tract of land which had been under lease through 1978. In Jennings' affidavit of March 1979, he stated that Lovell indicated to him that a deed would be forwarded within a week. However, a dispute over Lovell's fees resulted and the deed was never sent to Jennings. The two men met in Beach on May 31, 1979, to resolve the dispute, and three deeds for the remaining tract of land were subsequently prepared, executed, and recorded in the office of the Register of Deeds of Golden Valley County conveying the land to the three heirs. On June 7, 1979, an order was issued showing that the estate taxes had been paid. Both the estates of Archie Bernatz and Bertha Bernatz have now been closed.

From its findings, the hearing panel of the Disciplinary Board drew the following conclusions and made the following recommendations:

"1. That the matter of the application for disciplinary action against Orrin B. Lovell, a member of the Bar of the State of North Dakota, is properly before this hearing panel jurisdictionally and procedurally.

"2. The findings and conclusions of this three member hearing panel are supported by clear and convincing evidence.

"3. The respondent was admitted to practice as an attorney and counselor at law in the courts of the State of North Dakota on April 1, 1950.

"4. The health problems of the respondent from 1970 through 1974 did not materially contribute to nor affect the conduct of the respondent in handling the estates of Archie and Bertha Bernatz.

"5. The respondent failed to maintain proper communication with his client in that he rarely responded to requests for information, to requests for action, and to requests for return of phone calls to his clients or the beneficiaries or heirs of the estates.

"6. The respondent was negligent in the handling of the Archie and Bertha Bernatz estates by his delay of nine months from the time he was instructed to sell the land before he advertised it. Such conduct violates the provisions of Canon 6, DR 6–101(A)(3) and Canon 7, DR 7–101(A)(1) and (3) of the Code of

Professional Responsibility as adopted by the State Bar Association of the State of North Dakota and approved by the North Dakota Supreme Court.

"7. The respondent was negligent in his representation of the Bernatz estates and related matters entrusted to him by his failure to make provisions for a downpayment and by his failure to provide for interest on the purchase price from the time that possession was delivered to the purchasers. Such conduct violates the provisions of Canon 6, DR 6–101(A)(3) and Canon 7, DR 7–101(A)(1) and (3) of the Code of Professional Responsibility.

"8. The respondent was negligent in his representation of the Bernatz estate when he failed to complete the sale of the property and the transfer of the monies received for that sale promptly in view of the fact that no arrangements for interest assessed to the purchasers was made for the period of time from the sale to the actual receipt of the monies in December, and the purchasers were allowed to farm the land and retain all crops and profits during the period from the sale to December of 1976. Such conduct violates the provisions of Canon 6, DR 6–101(A)(3) and Canon 7, DR 7–101(A)(1) and (3) of the Code of Professional Responsibility as adopted by the State Bar Association of the State of North Dakota and approved by the North Dakota Supreme Court.

"9. The respondent unduly delayed and was negligent in the handling of the Archie and Bertha Bernatz estates by his failure to file the estate taxes in either estate in a timely manner incurring substantial assessment of interest against the estates and by his failure to complete either estate in a timely fashion. Such conduct violates the provisions of Canon 6, DR 6–101(A)(3) and Canon 7, DR 7–

101(A)(3) of the Code of Professional Responsibility as adopted by the State Bar Association of the State of North Dakota and approved by the North Dakota Supreme Court.

"10. The respondent has received prior discipline in the nature of one private reprimand.

"WHEREFORE, it is the recommendation of this Three Member Hearing Panel of the Disciplinary Board of the Supreme Court that the respondent be publicly reprimanded for his conduct and violations of the Code of Professional Responsibility and that he be required to pay for the expense of the formal disciplinary proceedings."

Lovell has taken exception to these conclusions and recommendations.

 This court is vested with the duty of maintaining the integrity of the legal profession by imposing disciplinary measures against attorneys when necessary. *In re Peterson*, 178 N.W.2d 738 (N.D.1970). We do not, however, act as a mere rubber stamp to approve the findings, conclusions, and recommendations of the Disciplinary Board. *Matter of Application, Discip. Action Against Lee*, 283 N.W.2d 179 (N.D. 1979). Instead, our review in disciplinary proceedings against attorneys is de novo on the record. *Matter of Maragos*, 285 N.W.2d 541 (N.D.1979). The standard of proof required is clear and convincing evidence. *Id.*

 In conclusion 6, the three-member hearing panel determined that Lovell was negligent in the handling of the estates of Archie and Bertha Bernatz by his delay of some nine months from the time he was instructed to sell the land before he advertised it. The panel concluded that Lovell's conduct violated Canon 6, DR 6–101(A)(3)[1] and Canon 7, DR 7–101(A)(1) and (3)[2] of

1. "DR 6–101 Failing to Act Competently.
"(A) A lawyer shall not:
 \* \* \* \* \* \*
(3) Neglect a legal matter entrusted to him."

2. "DR 7–101 Representing a Client Zealously.
"(A) A lawyer shall not intentionally:
(1) Fail to seek the lawful objectives of his client through reasonably available means

permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with

the Code of Professional Responsibility as adopted by the State Bar Association and approved by the Supreme Court. We disagree.

Although Earl Jennings stated in his affidavit to the Disciplinary Board that it was determined at the June 1975 meeting that two tracts of land were to be sold immediately and that the purchasers would receive the landowner's share of the crop for 1975, Lovell contends that no such determination was ever made. Lovell asserts that it was his recommendation that the land be sold after January 1, 1976, since it had already been seeded for the 1975 crop season and the estate could, therefore, benefit by receiving the estate's share of the crop for that year. His judgment was that the estate would benefit from the delayed sale because a better purchase price could be obtained after the first of the year. There is no evidence in the record to show that Evelyn Jennings, personal representative of the estate of Archie Bernatz, took exception to this arrangement or to the notice of the sale which was published in April of 1976.

We believe that the estate of Archie Bernatz could have been closed prior to the death of Bertha Bernatz on April 16, 1975 had Lovell proceeded expeditiously with the probate, but no one suffered detriment from that failure. Bertha Bernatz did not want to sell the land and for that reason, apparently Lovell felt no urgency in expediting the closing of the Archie Bernatz estate.

Viewing the evidence in the light most favorable to Lovell, see, *Matter of Application, Discip. Action Against Lee,* 283 N.W.2d at 182, the evidence is not so clear and convincing as to warrant the conclusion that Lovell was negligent in waiting until the crop was harvested to advertise the land for sale.

In conclusions 7 and 8, the hearing panel determined that Lovell was negligent when he failed to provide for a downpay-

ment or for the payment of interest on the purchase price of the land from the time possession was delivered to the purchasers. The panel also found Lovell to be negligent when he failed to complete the sale of the estate property in a timely fashion. Both allegations of negligence were determined to be in violation of Canon 6, DR 6–101(A)(3) and Canon 7, DR 7–101(A)(1) and (3) of the Code of Professional Responsibility. We disagree.

The record shows that Evelyn Jennings, personal representative of the estate of Archie Bernatz, signed the notice of private sale of real estate which set forth the terms and conditions of the sale. There is no evidence that she took exception to and opposed the terms and conditions of the sale of land as set forth in the notice, and thus Earl Jennings' contention that thousands of dollars were lost to the estate because the notice of sale did not reserve the landlord's share of the crop for 1976 is without merit. The Disciplinary Board conceded in its brief to this court that this situation (Lovell's failure to provide for a downpayment or for interest on the purchase price) may have been remedied had the sale been completed and the proceeds transferred shortly after the bids were closed. However, the delay in closing the sale and transferring the proceeds cannot be solely attributed to Lovell. We do not think it unusual that no provision was made in the notice of the sale for a reservation of the landlord's share of the crop when the land was advertised for sale in April, 1976, with bids to be opened on April 20th of that year. That approach was no doubt intended to encourage bidding and to increase the amount of the bids. A reservation of the crop for 1976 would have had the opposite effect. Incidentally, Earl Jennings, in his affidavit of August 15, 1979, said, "It was agreed that the purchasers would be allowed to farm the land that year and that no portion of the crop nor rent would be charged."

courtesy and consideration all persons involved in the legal process.

\* \* \* \* \* \*

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

The record denotes that Lovell delivered the abstracts for the two tracts of land, which were the subject of the proposed sale, to the Abstract and Title Company of Beach, North Dakota, in January of 1976. True, the abstractor was not known for his speed in continuing and certifying abstracts, but can we attribute the delay in continuing the abstracts to Lovell? We think not. One might argue that to meet that problem, Lovell could have sent the abstracts to the abstractor earlier, but an abstract is of value only if it shows all possible entries, and to do that, it should be continued, if not simultaneously with the sale, at least as close to the time of sale as reasonably possible.

During the period of time from January to July 1976, the record discloses that Evelyn Jennings became rather upset over the delay in the return of the abstracts and indicated to Lovell she wanted to bring a lawsuit against the abstract company. According to Lovell, he recommended that another attorney handle such a lawsuit because he (Lovell) was reluctant to file suit against the local abstractor with whom he conducted a considerable amount of business. The estate files were thereafter transferred to William O. Heth in Dickinson sometime in June of 1976. This transfer, according to Lovell, was at Evelyn Jennings' request and based upon his recommendation.

As previously set forth in this opinion, Heth's involvement in the probate of the Bernatz estates is, at best, hazy. A determination of his role in the proceedings is further complicated by Heth's poor memory and the lack of any documentation or records in either Heth's or Lovell's office which reveal when the files were transferred, why they were transferred, what work Heth was to perform or did perform on the files, whether or not Heth was substituted as attorney-of-record for Lovell, or when the files were later transferred back to Lovell and for what reasons. The only correspondence relating to this matter consists of the letters sent from Heth to Lovell on June 16, 1976, and August 6, 1976, wherein Heth seemed to be seeking assistance on how to proceed in probating the estates.

The abstracts were finally returned to Lovell on July 22, 1976, and at that time the files remained in Heth's office. Lovell later retrieved the files from Heth's office in Dickinson sometime in early October of 1976. The closing papers in the land transaction were prepared and mailed for Evelyn Jennings' signature on November 5, 1976, and returned to Lovell in early December. The Jenningses received two checks for the full purchase price of the land on December 16, 1976.

While we do not understand the arrangement which existed between Lovell, Heth, and Evelyn Jennings, it does not appear to have worked out satisfactorily for anyone in this case. Notwithstanding that fact, the entire blame for the delay in conjunction with this period should not fall on Lovell, as he may have assumed that once he surrendered the files, the responsibility rested upon the lawyer who accepted the files and upon Evelyn Jennings. Neither lawyer comes out looking proficient in this interval, but the record is not one that permits us to conclude that the evidence convicts Lovell clearly and convincingly of negligence justifying public censure. It would, however, seem to justify a recommendation to the Continuing Legal Education (CLE) Committee of the State Bar Association that it regularly provide training in conjunction with its continuing legal education seminars in inter-office relationships and responsibilities, including the keeping of records relative thereto.

We do believe, however, that Lovell owed a duty to at least respond to Heth's letters and pleas for assistance. Lovell should have either given Heth the advice and assistance he sought in order to expedite the probate of the estates, or he should have told Heth that he no longer assumed any responsibility for the probate of the estates. He might have requested a release in writing from the personal representative and also from the county court. Professional courtesy would seem to have required some kind of response from Lovell, but to

place the blame for the delay on him is to use him as a scapegoat for what appears to be some unfortunate circumstances to which many contributed. The entire arrangement between Lovell, Heth, and Evelyn Jennings was plagued by a lack of documented communication which is unfortunate and reflects poorly on all persons involved.

■ Finally, in conclusion 9, the hearing panel determined that Lovell was negligent in the handling of the two Bernatz estates by his failure to file the estate tax returns in a timely manner, and by his failure to complete either estate in a timely fashion. We again disagree.

Lovell contended that the primary reason for the delay in completing the estate tax returns was Evelyn Jennings' uncooperative attitude and her failure to provide him with the information needed to complete Archie Bernatz's income tax returns, obtain an estate tax clearance for the estate of Archie Bernatz, and close out the estate. This, in turn, would have expedited the closing of the estate of Bertha Bernatz.

We recognize that Lovell could have, and should have, pursued the matter of obtaining the pertinent tax information in a more expeditious manner. However, the delay in filing the income and estate tax returns and closing the Bernatz estates cannot be solely attributed to Lovell. The delays are attributable to a number of factors, including, but not limited to, (1) the abstract company's seven-month delay in completing the continuation of the two abstracts of title to the two quarter sections of land; (2) the transfer to, and the retention of, the files in Heth's office from June of 1976 until October of 1976, which it appears was done at Evelyn Jennings' request; (3) the ages and health of the personal representatives of the two estates, namely: Bertha Bernatz and Evelyn Jennings; (4) fee disputes; and (5) the lack of cooperation and communication between all parties involved in the probate of the two estates. For these reasons we do not believe that the hearing panel's conclusion 9 is supported by clear and convincing evidence.

■ The importance of the public trust in the legal profession is well-established. Any conduct of an attorney which has caused a loss of respect and confidence in the legal profession impairs that public trust and will not be condoned. Therefore, attorneys have traditionally been held to a higher standard than laymen. *Matter of Jaynes*, 267 N.W.2d 782 (N.D.1978); *Matter of Walton*, 251 N.W.2d 762 (N.D.1977).

■ We are of the opinion that Lovell has delayed and procrastinated to some extent in his handling of the probate of the estates in the instant case. A member of the legal profession is seldom justified in delaying a client's business. We have held that neglecting a client's case after accepting it is a very serious violation of the Code of Professional Responsibility. *Matter of Jaynes*, 278 N.W.2d 429 (N.D.1979). However, the record in this case discloses that the delays were not solely attributable to Lovell. All parties involved in the probate of an estate have an obligation to cooperate and communicate with each other to ensure appropriate and timely disposition of probate proceedings. This means that personal representatives as well as attorneys have a duty to cooperate and communicate. It is obvious that such cooperation and communication were lacking in the case at bar.

■ We do not compliment Lovell for his handling of the probate of the two Bernatz estates, but, on the other hand, we do not believe the conduct is of such severity or magnitude as to warrant the imposition of a public reprimand in light of the totality of the circumstances. Counsel for the Disciplinary Board conceded at oral argument that Lovell's conduct was "less onerous" than the conduct of other attorneys who have appeared before this court in disciplinary proceedings. *See Matter of Maragos*, 285 N.W.2d 541 (N.D.1979); *Matter of Jaynes*, 278 N.W.2d 429 (N.D.1979); *In re Jelliff*, 271 N.W.2d 588 (N.D.1978); *Matter of Walton*, 251 N.W.2d 762 (N.D.1977); *Matter of Garcia*, 243 N.W.2d 383 (N.D. 1976). The conduct of attorneys should not be weighed with hair-splitting nicety, nor

should the public image of the legal profession be tarnished by the misconduct of an attorney.

 Notwithstanding that we do not think this a proper case for a public reprimand, we hope that this opinion will serve as a warning to attorneys throughout the state that they should carefully re-examine files in their offices, particularly probate files, which may have remained open for a sustained period of time and could be closed with timely attention, and thereafter take prompt action to do just that. If such action is taken by all of our lawyers, this case could considerably reduce, in the future, complaints involving attorney delay.

We conclude that there is no basis for the issuance of a public reprimand to Lovell. Although we share the concern of the Disciplinary Board's hearing panel, we conclude that the evidence in this case does not support its conclusions and recommendations. We are not unmindful of the embarrassment and distress Lovell has already endured as a result of these proceedings and the attendant publicity. Further disciplinary action would serve no valid purpose.

For the reasons stated in this opinion, the recommendations of the hearing panel of the Disciplinary Board that respondent, Orrin B. Lovell, be publicly censured and that he pay the costs of the disciplinary proceedings is rejected.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.