**DISCIPLINARY BOARD OF THE SUPREME COURT, Petitioner,**

v.

**Patrick S. O'NEIL, Respondent.**

**Civ. No. 10204.**

Supreme Court of North Dakota.

Dec. 2, 1982.

Joseph F. Larson, II, Bismarck, for petitioner.

Chapman & Chapman, Bismarck, for respondent; argued by Daniel J. Chapman, Bismarck.

PEDERSON, Justice.

This is a disciplinary proceeding against Patrick S. O'Neil, an attorney who practiced law in Mandan until July 1980. The Disciplinary Board of the Supreme Court instituted formal proceedings against O'Neil after investigating five complaints made by various individuals. The disciplinary board appointed a three-member hearing panel to take evidence. A hearing on the complaints was held and the hearing panel made findings of fact, conclusions of law, and recommendations. A summary of the panel's relevant findings and conclusions follows.

## THE LARSON ESTATE

In March of 1979 Stanley Larson retained O'Neil to probate the estate of Larson's father. The estate consisted of no real property and a minor amount of personal property. Larson was the sole beneficiary. O'Neil told Larson that the estate would be probated within 90 days. O'Neil never filed nor completed the probate and did not communicate with Larson. In April of 1980 Larson discharged O'Neil.

## THE VIETZ BANKRUPTCY

On June 1, 1977 Delmer Vietz retained O'Neil to represent him in a bankruptcy proceeding. O'Neil began preparation of the bankruptcy petition but failed to proceed. Early in 1980 Vietz retained other counsel.

## THE HURST BANKRUPTCY

On June 19, 1978 O'Neil accepted a $400 retainer fee from Mr. and Mrs. Henry Hurst to institute bankruptcy proceedings on their behalf and to represent them in the proceeding. O'Neil took no action on the matter. When Mr. Hurst repeatedly inquired about the status of his case, O'Neil promised that the bankruptcy proceeding would be completed by March of 1980. O'Neil, however, failed to prepare a petition for bankruptcy and never completed the matter. O'Neil returned the $400 retainer fee only after the Hursts brought suit in small claims court and obtained a judgment against O'Neil.

## THE UNPAID COURT REPORTER

In October of 1976 O'Neil hired Christopher L. Columbus as the court reporter for a deposition in St. Paul, Minnesota. Columbus billed O'Neil $214.04 for the services rendered but was never paid.

## THE HECK DIVORCE

In January 1979 O'Neil accepted a $400 retainer fee from Bonnie Heck to represent her in a divorce. O'Neil never completed the divorce. At the hearing before the panel, Heck testified that she had been pressured into filing the complaint by her father, and that she suffered no harm because of O'Neil's conduct.

The hearing panel concluded that O'Neil's conduct in the Larson Estate, the Vietz Bankruptcy, and the Hurst Bankruptcy matters each constitutes a violation of the Code of Professional Responsibility, Canon 1, DR 1–102(A)(1);[1] Canon 6, DR 6–101(A)(3);[2] Canon 7, DR 7–101(A)(1), (2) and (3),[3] and of § 27–14–02(7), NDCC.[4]

1. "DR 1–102 Misconduct.
   (A) A lawyer shall not:
     (1) Violate a Disciplinary Rule."

2. "DR 6–101 Failing to Act Competently.
   (A) A lawyer shall not:
     (1) . . .
     (2) . . .
     (3) Neglect a legal matter entrusted to him."

3. "DR 7–101 Representing a Client Zealously.
   (A) A lawyer shall not intentionally:
     (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
     (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as per-

The panel concluded that O'Neil's conduct in the matter of the Unpaid Court Reporter and the Heck Divorce did not constitute a violation of the Code of Professional Responsibility, nor of any law of this State.

The hearing panel recommended that O'Neil's certificate of admission to the North Dakota Bar be suspended for at least one year and that he pay the costs of the disciplinary proceeding.

Staff counsel for the disciplinary board, apparently without specific direction of the disciplinary board, filed exceptions to the conclusions of the panel that O'Neil's conduct in the matter of the Unpaid Court Reporter did not constitute a violation of the Code of Professional Responsibility. Staff counsel asserts that O'Neil's failure to pay for the court reporting services constituted professional misconduct in violation of Canon 1, DR 1–102(A)(1), (4) and (6)[5] of the Code of Professional Responsibility.

In his brief, staff counsel also excepted to the panel's conclusion that O'Neil's conduct in the Heck divorce matter did not violate the Code of Professional Conduct. Instead, staff counsel urged this court to find that O'Neil violated Canon 6, DR 6–101(A)(3)[6] and Canon 7, DR 7–101(A)(1), (2) and (3)[7] when he failed to complete this divorce action.

Finally, staff counsel excepts to the panel recommendation of suspension and asks that O'Neil be disbarred.

O'Neil filed a brief urging this court to affirm the recommendation of the hearing panel and to dismiss staff counsel's excep-

tions. O'Neil asserted that the North Dakota Rules of Disciplinary Procedure permit only a respondent to file exceptions to recommendations of a hearing body. O'Neil also asserts in his brief that he no longer intends to practice law and would willingly resign. He has not, however, proceeded pursuant to Rule 12, North Dakota Rules of Disciplinary Procedure, to consent to suspension or disbarment.

Rule 10(*l*) and (m) of the North Dakota Rules of Disciplinary Procedure provide that:

"(*l*) Unless the hearing body dismisses or the matter is concluded by private reprimand, the hearing body, within 60 days after the conclusion of its hearing, shall submit to the Supreme Court a report containing its findings and recommendations, together with the entire record of its proceedings. After the filing of the report, a copy thereof shall be served on the respondent. *The respondent may file exceptions to the report within 20 days after the date of service of a copy thereof or within an additional period not exceeding 20 days granted by the Supreme Court for good cause shown.* Within 60 days after the filing of the report and the filing of exceptions, if any, the respondent shall file an opening brief pursuant to the rules governing civil appeals and other briefs may be filed and oral argument may be had as therein provided.

"(m) *If neither the respondent nor disciplinary counsel object* to the findings and recommendations of the hearing

---

mitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

**4.** "27–14–02. ... The certificate of admission to the bar of this state of an attorney and counselor at law may be revoked or suspended by the supreme court if he has:

. . . . .

"7. Committed any other act which tends to bring reproach upon the legal profession. The enumeration of certain grounds for disbarment or suspension of attorneys at law shall not be deemed a limitation upon the

general powers of the supreme court to suspend or disbar for professional misconduct."

**5.** "DR 1–102 Misconduct.

(A) A lawyer shall not:

. . . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . . .

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

**6.** See n. 2.

**7.** See n. 3.

body, oral argument and submission of the briefs may be waived by stipulation, subject to the approval of the Supreme Court." [Emphasis added.]

At oral argument staff counsel argued that because review of the record is de novo by this court, *Matter of Maragos,* 285 N.W.2d 541, 546 (N.D.1979), all relevant information should be presented for our consideration. Therefore counsel asserts that it was proper for him to file exceptions to the hearing panel's conclusions which, by inference at least, is authorized by Rule 10(m), NDRDP. We note that there is no helpful recorded history behind the adoption of Rule 10 which assists in its interpretation.

■ This court does not act as a "mere rubber stamp," approving, after perfunctory review, the findings and recommendations of the disciplinary board. *Matter of Application, Discip. Action Against Lee,* 283 N.W.2d 179, 181 n. 5 (N.D.1979). We have often ordered the parties to file briefs to provide "additional insight that may not be found in the findings, conclusions, and recommendations of the Disciplinary Board." *Matter of Application Discip. Action Against Lee, supra,* 283 N.W.2d at 181.

■ It is clear that Rule 10(*l*) and (m), NDRDP, would benefit, by amendment, to eliminate any possible conflict and to clarify the role of staff counsel. It would be absurd to construe Rule 10(m) as authority for staff counsel to file objections in this court initially. Interpretations which lead to absurd results are as undesirable when applied to rules adopted by this court as when applied to statutes. We have often applied this principle to statutory construction. See *e.g., Skoog v. City of Grand Forks,* 301 N.W.2d 404 (N.D.1981), and § 1–02–38(3), NDCC.

Because staff counsel's function is that of advisor and counsel for the disciplinary board and its hearing panels, in the interest of good order we require that staff counsel continue in that representative capacity when disciplinary proceedings are brought into this court. If the disciplinary board

believes otherwise, it should submit an appropriate proposed rule amendment.

If the disciplinary board makes findings or recommendations that conflict with those of the hearing panel, that fact should be made known to this court for its consideration.

■ We do agree with the hearing panel that O'Neil's conduct reflects a pattern of delay and neglect which must not be condoned. O'Neil's conduct in the cases of the Larson Estate, the Vietz bankruptcy, and the Hurst bankruptcy each show delay and neglect. Although O'Neil's conduct can partly be attributed to health and other personal problems, personal problems do not justify failure to attend to matters entrusted to an attorney. *Doyle v. State Bar,* 15 Cal.3d 973, 126 Cal.Rptr. 801, 803, 544 P.2d 937, 939 (1976); *In Re Fraser,* 83 Wash.2d 884, 890–91, 523 P.2d 921, 925 (1974); *Grove v. State Bar of California,* 66 Cal.2d 680, 58 Cal.Rptr. 564, 567, 427 P.2d 164, 167 (1967). See also *Matter of Maragos, supra,* 285 N.W.2d at 547.

■ O'Neil's behavior constitutes serious misconduct. Habitual failure to attend to matters entrusted to an attorney and failure to communicate with the client constitute grounds for discipline. See *Matter of Jaynes,* 278 N.W.2d 429, 434 (N.D.1979); *Matter of Jaynes,* 267 N.W.2d 782, 784 (N.D.1978); *Matter of Garcia,* 243 N.W.2d 383, 385 (N.D.1976).

■ In determining what discipline is warranted, however, each case must be decided on its own particular facts. *Matter of Maragos, supra,* 285 N.W.2d at 546. There are no fixed standards as to what constitutes an appropriate penalty. The purpose of a disciplinary proceeding is not to punish the attorney but rather to determine, in the public interest, if the attorney should be permitted to practice law. *Matter of Maragos, supra,* at 545.

Consideration of the findings and recommendations of the hearing panel and of all relevant factors, including O'Neil's expression that he no longer intends to practice law, leads us to conclude that the one-year

suspension recommended by the hearing panel, rather than disbarment recommended by staff counsel, is appropriate here. O'Neil's certificate of admission to the bar of this State is hereby suspended for one year.

In *Application of Christianson,* 253 N.W.2d 410, 413 (N.D.1977), we said that we are satisfied that we have the authority to require a reexamination by the State Bar Board as a condition of reinstatement of a suspended or disbarred attorney. Under the circumstances here, we do hereby require Patrick S. O'Neil to take and pass such examination as the State Bar Board may direct before he will be reinstated to the practice of law in the State of North Dakota.

It is further ordered that O'Neil pay for the costs of the disciplinary proceedings, which amount will be determined by the disciplinary board or its designated officer or agent, and that he submit to the Clerk of the Supreme Court evidence of payment or evidence that satisfactory arrangements for payment have been made with the disciplinary board.

One year suspension ordered. Costs to be paid. Reinstatement conditioned upon successful reexamination.

ERICKSTAD, C.J., and PAULSON, SAND and VANDE WALLE, JJ., concur.