In the Matter of the Application for Disciplinary Action Against Cheryl L. ELLIS, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

Cheryl L. ELLIS, Respondent.

Civ. No. 870201.

Supreme Court of North Dakota.

April 19, 1989.

Vivian Elaine Berg (argued), Disciplinary Counsel, Bismarck, for petitioner.

Robert Vogel Law Office, P.C., Grand Forks, for respondent; argued by Alice R. Senechal, Grand Forks. Appearance by Cheryl L. Ellis, Fargo.

ERICKSTAD, Chief Justice.

This is a disciplinary proceeding brought against Cheryl L. Ellis, an attorney engaged in the practice of law at Fargo. Following formal proceedings, a hearing

panel of the Disciplinary Board of the Supreme Court recommended that Ellis' certification of admission to the bar be revoked and that she be disbarred from the practice of law in this state.

■ We review disciplinary proceedings against attorneys *de novo* on the record with the standard of proof being by clear and convincing evidence. *Disciplinary Board of the Supreme Court v. McKennett*, 349 N.W.2d 29 (N.D.1984). In reviewing the record, we accord due weight to the findings, conclusions, and recommendations of the hearing panel. *Matter of Disciplinary Action Against Garcia*, 366 N.W.2d 482 (N.D.1985). However, this court does not act as a mere "rubber stamp" approving the findings and recommendations of the Disciplinary Board after a perfunctory review. *Disciplinary Board of the Supreme Court v. O'Neil*, 326 N.W.2d 879 (N.D.1982). In determining what discipline is warranted, each case must be decided on its own particular facts. *Disciplinary Board of the Supreme Court v. O'Neil*, 326 N.W.2d 879 (N.D.1982).

### Milbank representation

Ellis received six files from Milbank Insurance Company (Milbank) concerning subrogation claims. After providing Milbank with an initial status report regarding each of the six files, Ellis was requested by Milbank to proceed with the case file entitled *Holznagel v. Koesterman*. Thereafter, Ellis failed to respond to correspondence from Milbank requesting status reports on the file. Ultimately, Milbank retained other counsel to represent it on this matter. Milbank was successful in obtaining the return of the file from Ellis only after "extraordinary efforts" to do so.

### Sliper representation

Ellis received a $500 retainer to represent David Sliper in a claim against Northrup King Company. Ellis failed to act diligently in preparing and submitting answers to interrogatories in that case and failed to comply with a discovery order of the court to do so. Ellis failed to communicate the status of the case with her client, who ultimately retained other counsel to represent him. Ellis misrepresented to her client that her failure to file timely answers to the interrogatories resulted because a consultant retained by the client to provide expert technical advice failed to review the interrogatories in a timely manner. The consultant denied ever receiving the interrogatories from Ellis for review. Ultimately, Sliper's case was conditionally dismissed with prejudice, subject to being reopened if Sliper agreed to pay the defendant's attorneys fees.

### Job representation

Ellis agreed to represent Richard A. Job regarding a claim Job had filed with the Workers Compensation Bureau (Bureau). Ellis failed to respond to correspondence from the Bureau and also failed to present evidence to the Bureau in support of her client's claim. Job ultimately retained another attorney to represent him.

The hearing panel found that Ellis violated the following provisions of the Code of Professional Responsibility:

"Canon 1, DR 1–102(A)(4), (5), and (6)

"(A) A lawyer shall not:

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

"Canon 6, DR 6–101(A)(3)

"(A) A lawyer shall not:

"(3) Neglect a legal matter entrusted to him.

"Canon 7, DR 7–101(A)(1), (2), and (3)

"(A) A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonable available means permitted by law and the

Disciplinary Rules, except as provided by DR 7–101(B)....

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

Having carefully reviewed the record, we conclude that there is clear and convincing evidence to support the panel's findings that Ellis violated the foregoing provisions of the Code of Professional Responsibility in the three client representations which we have briefly summarized. The record contains clear and convincing evidence that Ellis is guilty of misrepresentation, neglect, and failure to provide diligent and professional representation for these clients. In each case Ellis' client suffered potential or actual harm from her inadequate representation.

Ellis does not openly concede that she failed to adequately represent her clients in these cases. While, not having directly acknowledged wrongdoing, Ellis has, however, implicitly recognized the impropriety of her representation in these cases by requesting that disciplinary sanctions be mitigated because she was suffering from major depression for a substantial portion of the time that she was representing these clients.

Dr. David Sharbo, a physician practicing psychiatry at the Fargo Clinic, treated Ellis for her depression. Dr. Sharbo testified that for periods of time between 1984 and 1986 Ellis suffered from major depression, and that Ellis, characteristic of a person afflicted by major depression, found it difficult to adequately function during that time. Dr. Sharbo further testified that with early detection and intervention many episodes of depression can be avoided or, if they occur, can be treated to allow the afflicted person to function normally.

We believe that Ellis has demonstrated that during the relevant time period she was suffering from a major depression for which she sought and received medical treatment. Based upon Dr. Sharbo's testimony, it is our understanding that in 1987 Ellis had responded to the treatment and was able to begin functioning normally.

An attorney's habitual failure to attend to matters entrusted to her by a client or to communicate with the client constitute grounds for discipline. *Matter of Garcia,* 243 N.W.2d 383 (N.D.1976). Under paragraph 4.4 of the North Dakota Standards for Imposing Lawyer Sanctions,[1] disbarment is appropriate when an attorney engages in a pattern of negligence which causes serious or potential injury to a client and suspension is appropriate when a lawyer engages in a pattern of negligence which causes injury or potential injury to the client which is not denominated as "serious" injury. Under paragraph 4.62 suspension is appropriate when an attorney knowingly deceives a client and causes injury or potential injury.

Personal problems do not justify an attorney's failure to attend to matters entrusted to the attorney. *Disciplinary Board of the Supreme Court v. O'Neil,* 326 N.W.2d 879 (N.D.1982). However, pursuant to paragraph 9.32(c) and (h) of the Standards, "personal or emotional problems" and "physical or mental disability or impairment" are mitigating factors which may justify a reduction in the degree of discipline imposed.

Having carefully considered all of the evidence in this record, including evidence of Ellis having been afflicted with major depression, we believe that the panel's recommendation of disbarment is unduly harsh. The primary purpose of disciplinary proceedings is not to punish the

---

1. On May 25, 1988, this court approved the North Dakota Standards For Imposing Lawyer Sanctions which are standards designed for use in imposing disciplinary sanctions for violations of the North Dakota Rules of Professional Conduct. These standards provide a useful guide to this court for promoting consistency in the imposition of discipline for the same or similar offenses.

attorney, but rather to determine if the attorney should be permitted, in the public interest, to continue to practice law. *Matter of Maragos*, 285 N.W.2d 541 (N.D. 1979). In similar factual circumstances involving attorney neglect and mishandling of client representation we have often imposed discipline less severe than disbarment, such as reprimand, suspension, or suspension stayed with probationary supervision. *See Matter of Disciplinary Action Against Britton*, 406 N.W.2d 364 (N.D. 1987); *Matter of Disciplinary Action Against Garcia*, 366 N.W.2d 482 (N.D. 1985); *Disciplinary Board of the Supreme Court v. O'Neil*, 326 N.W.2d 879 (N.D.1982); *Matter of Maragos*, 285 N.W.2d 541 (N.D.1979). After due consideration, we believe the following disciplinary action is appropriate in this case.

We hereby impose upon Ellis a two-year suspension from the practice of law, but we stay imposition of all but the first 90 days of the suspension for a one-year probationary period, providing that Ellis complies with the following probationary conditions.

Within the first 90 days of the suspension Ellis must obtain and submit to the Clerk of this court and to the Disciplinary Board a medical opinion that Ellis is not presently suffering from a major depression or other emotional affliction which is disabling or which renders her unable to function normally. Within the first 90 days of the suspension Ellis must also submit to the Clerk of this court and to the Disciplinary Board the name of a licensed North Dakota attorney, in good standing, who accepts in writing the responsibility of acting in a supervisory capacity over Ellis' practice of law for a one-year probationary period. If Ellis is unable to submit a favorable medical report or to secure a supervising attorney within 90 days, the stay on the balance of the two-year suspension will be automatically lifted and the balance of the suspension will go into effect.

The supervising attorney must agree to monitor all files held by Ellis in the practice of law and must agree to submit a written report once every three months to the Clerk of this court and to the Chairman of the Disciplinary Board stating under oath that the attorney has reviewed the status of Ellis' case files and stating whether or not in the affiant's opinion, with regard to those files, Ellis has acted in accordance with the Rules of Professional Conduct. If, during the one-year probationary period, the supervising attorney files a report indicating that, in his or her opinion, Ellis has violated the Rules of Professional Conduct, the Disciplinary Board must promptly review the report, together with whatever other evidence it deems necessary. If the Board concurs with the supervising attorney's report of a violation by Ellis, the stay will be automatically lifted and the balance of the two-year suspension will become effective ten days after the mailing of notice of the suspension to Ellis (by certified mail with return receipt requested at her last known address). Ellis will be required to keep her address current with the Clerk of this court.

If Ellis successfully completes the one-year probationary period without violating the Rules of Professional Conduct and the supervising attorney files with the Clerk of this court and the Chairman of the Disciplinary Board a final written report indicating that fact, the balance of the two-year suspension will be deemed to be terminated.

Pursuant to Rule 21(d), of the North Dakota Rules of Disciplinary Procedure,[2] Ellis is ordered to pay for the costs of the disciplinary proceedings in an amount to be determined by the Disciplinary Board. However, Ellis shall not be required to pay any costs associated with the May 28, 1987 hearing or the related appeal in *Disciplinary Board of the Supreme Court v. Ellis*, 418 N.W.2d 788 (N.D.1988). Payments shall be made in installments over a four-

---

**2.** Imposition of costs in a lawyer proceeding is provided for under Rule 1.3(D), of the Procedural Rules for Lawyer Disability and Discipline (NDPRLDD), effective September 1, 1988. Because a formal hearing was held in this case

year period as set forth in a payment schedule to be submitted to Ellis by the Disciplinary Board. Failure by Ellis to pay costs within the four-year period shall result in her automatic suspension from the practice of law, which suspension shall continue until Ellis' default on the payment of costs has been remedied.[3]

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

prior to the effective date of these rules, the prior rules control. See Rule 6.6, NDPRLDD.

3. We direct compliance with Rule 6.3 of the Procedural Rules for Lawyer Disability and Discipline effective September 1, 1988, notwithstanding footnote 2 of this opinion.

The governing rule reads:

"RULE 6.3  NOTICE OF STATUS

"*A. Notice Required.* Within 10 days after the date of the order by which the lawyer is disbarred, transferred to disability inactive or incapacitated status, placed on interim suspension, or suspended, the lawyer shall cause notice to be given by registered or certified mail, return receipt requested, to:

"(1) All clients being represented in pending matters;

"(2) Co-counsel in pending matters; and

"(3) Opposing counsel in pending matters, or in the absence of such counsel, the adverse parties.

"This notice shall also state the place of residence of the client and of the lawyer. The notice shall include the order of the court and state that the lawyer cannot act as a lawyer after the effective date of the order.

"*B. Special Notice.* The court may direct the issuance of notice to such financial institutions or others as may be necessary to protect the interests of clients or other members of the public.

"*C. Client Property.* The lawyer shall deliver to all clients being represented in pending matters any papers or other property to which they are entitled and shall notify them

and any lawyer representing them of a suitable time and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers or other property. The lawyer shall promptly refund any part of fees paid in advance which have not been earned.

"*D. Effective Date.* Orders imposing suspension or disbarment, reprimand, probation, or transfer to disability inactive or incapacitated status are effective immediately, unless otherwise ordered by the court.

"*E. Winding Up.* In the event the client does not obtain another lawyer before the effective date of the disbarment, transfer, or suspension, it shall be the responsibility of the disciplined lawyer to move for leave to withdraw in each court or agency in which a proceeding is pending. The lawyer shall file with the court or agency before which the matter is pending a copy of the notice to opposing counsel or adverse parties.

"*F. Proof of Compliance.* Within 10 days after the effective date of an order of disbarment, suspension, or transfer to disability inactive or incapacitated status, the lawyer shall file with this court an affidavit showing:

"(1) Full compliance with the provisions of the order and with these rules;

"(2) All other state, federal and administrative jurisdictions of admission to practice;

"(3) The residence or other addresses where communications may thereafter be directed to the lawyer; and that

"(4) A copy of such affidavit has been served upon counsel."