In the Matter of the Application for DISCIPLINARY ACTION AGAINST F. Lorene Whitesides LARSON, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

F. Lorene Whitesides LARSON, Respondent.

Civ. No. 890231.

Supreme Court of North Dakota.

Jan. 25, 1990.

Mary Norum Hoberg, Temporary Disciplinary Counsel, Bismarck, for petitioner.

F. Lorene Whitesides Larson, Park River, pro se.

## PER CURIAM.

This is a disciplinary proceeding brought against Lorene Whitesides Larson (Larson), an attorney licensed in North Dakota since 1942, who is engaged in the practice of law at Park River, North Dakota. Following a formal proceeding, a hearing panel of the Disciplinary Board of the Supreme Court recommended that Larson be suspended from the practice of law for a period of 90 days and be liable for all costs of the disciplinary proceedings.

Larson's professional conduct problems arose from a series of transactions that she conducted on behalf of a Ms. "B", an elderly lady who had given a power of attorney to Larson on November 21, 1981. From that date until Ms. B's death on December 30, 1987, Larson handled Ms. B's financial affairs including writing checks on Ms. B's checking account, making deposits in her checking account, and purchasing savings certificates.

## LAND SALE

In August of 1984, Larson sold a parcel of land owned jointly by Ms. B and her sister for $81,000. Larson paid herself a three-percent commission on the sale price, $2,430, on October 23, 1984. On November 14, 1984, Larson deposited Ms. B's share of the sale proceeds, $33,753, into Ms. B's account. On the same day of the deposit, Larson wrote a check on Ms. B's account payable to herself for $9,000. At the disciplinary hearing, Larson testified that she thought she had cashed one of Ms. B's certificates of deposit and had inadvertently deposited the money into her own account. Upon discovery of her "error" in August of the following year, Larson did not promptly reimburse Ms. B's account. Larson's first restitution payment of $1,500 was not paid until May 6, 1986, and the full $9,000 was not repaid until March 25, 1989, more than four years after Larson had deposited the money into her own account. In a letter to Pembina County Social Services dated February 6, 1987, Larson explained her delay in reimbursing Ms. B's account by stating, "when I discovered my error I was short on 'cash flow' and just let it slide and did not get it [the money] into her account until she [Ms. B.] was running low on money."

## NO ACCOUNTING

Larson handled Ms. B's financial affairs from November 21, 1981, until Ms. B's death on December 30, 1987. Larson prepared accountings of expenditures on Ms. B's behalf and sent them to Ms. B's brother. However, the accountings ceased sometime in 1983 and have not been made since.

## APPLICATION FOR MEDICAL ASSISTANCE

In July of 1986, Larson made application for medical assistance on behalf of Ms. B through Pembina County Social Services [Social Services]. Ms. B's application was denied on October 1, 1986, due to Larson's failure to provide Social Services with requested verifications regarding Ms. B's eligibility. On the initial application of July

1986, Larson answered "no" to the application question which asked whether Ms. B had sold anything of value, such as land, in the past two years despite the fact that the aforementioned land sale occurred in August of 1984 with Ms. B receiving the sale proceeds in November of 1984. After the initial application was denied, Larson filed a second application for medical assistance on October 2, 1986. Once again, she stated that no transfer of real estate had been made within two years of the application. When questioned at the disciplinary hearing about her incorrect answers, Larson testified that, "I suppose I didn't check back to the exact date of the sale, but I knew that the land was gone and that the money had been spent...."

## ESTATE MATTER

On January 19, 1988, approximately three weeks after Ms. B's death, Larson wrote a letter to the Social Service Board stating that she would send the balance of Ms. B's checking account to them as soon as she resolved all loose ends of the estate. Fourteen months later on March 14, 1989, Larson wrote to the Social Services Board and informed them that she would send the balance of Ms. B's checking account, $674.84, to the Board the following day. The payment did not occur until a week later on March 22, 1989. Three days later, Larson wrote another letter to the Social Services Board which stated that, "I find that I owe the above account [Ms. B's] the sum of $2,000. My check is being enclosed to pay same." When the Social Service Board requested that Larson provide an accounting, she failed to do so. As of the June 19, 1989, disciplinary hearing, Larson had yet to file an accounting.

The hearing panel found that Larson violated the following provisions of the Code of Professional Responsibility:

"Canon 1, DR 1–102(A)(4), (5), and (6) of the Code of Professional Responsibility, as follows:

"(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

\* \* \* \* \* \*

"Canon 9, DR 9–102(A) and (B)(3) of the Code of Professional Responsibility, as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

\* \* \* \* \* \*

"Rules 1.2(A)(3) of the North Dakota Procedural Rules for Lawyer Disability and Discipline, as follows:

"(A) [Grounds for Discipline.] It is misconduct and grounds for disciplinary sanctions for a lawyer to:

(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

■ We review disciplinary proceedings against attorneys de novo on the record with the standard of proof being by clear and convincing evidence. *Disciplinary Board of the Supreme Court v. McKennett,* 349 N.W.2d 29, 31 (N.D.1984). In

reviewing the record, we accord due weight to the findings, conclusions, and recommendations of the hearing panel. *Matter of Disciplinary Action Against Garcia,* 366 N.W.2d 482, 484 (N.D.1985). However, this Court does not act as a mere "rubber stamp" approving the findings and recommendations of the Disciplinary Board after a perfunctory review. *Disciplinary Board of the Supreme Court v. O'Neil,* 326 N.W.2d 879, 882 (N.D.1982). In determining what discipline is warranted, each case must be decided on its own particular facts. *O'Neil, supra,* 326 N.W.2d at 882.

■ In this case, Larson contends that she did not engage in any conduct which involved dishonesty, deceit or misrepresentation. Larson argues that she did not intentionally convert $9,000 of Ms. B's funds for her own use. To the contrary, Larson contends she does not recollect writing the $9,000 check on Ms. B's account which was payable to herself. Although she concedes that the check was written, Larson argues that the check was a result of inadvertent error caused by lack of office staff, high work stress and personal and financial problems. In fact, Larson attributes all of her alleged professional misconduct to office, personal and financial problems.

While we sympathize with Larson's personal and financial problems, we will not excuse her misconduct on account of them. This Court has previously stated that "personal problems do not justify an attorney's failure to attend to matters entrusted to the attorney." *Matter of Ellis,* 439 N.W.2d 808, 810 (N.D.1989).

We conclude that there is clear and convincing evidence to support the hearing panel's findings that Larson violated the aforementioned Rules of Professional Conduct. Particularly disturbing is the fact that Larson did not promptly reimburse Ms. B's account upon discovering the $9,000 transfer. It took Larson approximately one year to commence restitution payments to Ms. B, and over three and a half years to reimburse Ms. B for the full $9,000. We find such attorney conduct inexcusable.

On the other hand, we are impressed with Larson's otherwise unblemished record which dates back to 1942. Under the circumstances, we find that there is little, if any, danger to the public from any possible repetition of her actions. We are satisfied that Larson's actions, while inexcusable, will not be repeated in the future.

We hereby impose upon Larson a 90-day suspension from the practice of law commencing March 1, 1990. Pursuant to Rule 1.3(D) of the North Dakota Procedural Rules for Lawyer Disability and Discipline, Larson is ordered to pay for the costs of the disciplinary proceedings in an amount and in a manner to be determined by the Disciplinary Board. Finally, we note that Larson voluntarily agreed to pay interest on the use of Ms. B's $9,000. Such a remedy is equitable considering the interest income that Ms. B lost as a result of Larson's erroneous transfer. Thus, Larson is further ordered to pay to the estate of Ms. B interest on the $9,000 in an amount and in a manner as determined by the Disciplinary Board.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.